# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MARK LAWRENCE C.,[1]

  Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

  Defendant.

Case No. 5:18-cv-00591-AFM

**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER**

Mark C. ("Plaintiff") filed this action seeking review of the Commissioner's final decision denying his application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On April 22, 2014, Plaintiff applied for disability insurance benefits, alleging that he became disabled on March 30, 2009. Plaintiff's application was denied initially and on reconsideration. (Administrative Record ["AR"] 70-82, 84-98.) A

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

hearing took place on October 3, 2016 before an Administrative Law Judge ("ALJ"). Both Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 31-69.)

In a decision dated November 4, 2016, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine and carpal tunnel syndrome ("CTS"). (AR 18.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: he is unable to climb ladders, ropes, or scaffolds; he is able to occasionally climb ramps and stairs, balance, stoop, kneel crouch, and crawl; he needs to avoid work at unprotected heights or around dangerous moving machinery; he is able to occasionally reach overhead with bilateral upper extremities; and he is able to frequently finger, handle, and feel with bilateral hands. (AR 20.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy. (AR 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 25.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ properly evaluated the medical evidence in assessing Plaintiff's RFC.

2. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### 1. Medical Evidence.

The ALJ summarized the medical evidence, beginning with Plaintiff's treatment notes from Aurora Sheboygan Clinic-Plymouth from 2012, which indicate that Plaintiff reported pain in his lumbar spine. Objective findings, however, showed negative straight leg raise bilaterally, normal gait, and good range of motion in both the cervical and lumbar spine. (AR 21, 321-323, 333-336.)[2] Similarly, treatment notes from Caduceus Imperial in 2014 revealed that Plaintiff was in no acute distress, had full range of motion of the spine without spasm, and normal muscle strength and tone throughout. (AR 385-389, 393-395.)

An April 2014 x-ray of Plaintiff's lumbar spine revealed slight narrowing at L4-L5 and L5-S1, while an x-ray of Plaintiff's cervical spine revealed mild degenerative disease at C6-C7 and C6-T1. (AR 401-402, 410-411.) An MRI performed in August 2014 showed mild bilateral foraminal stenosis, moderate degenerative disc disease at L4-L5 and L5-S1, and mild degenerative facet disease at the inferior lumbar levels. (AR 417-418.)

The ALJ also discussed Plaintiff's treatment notes from Pain Management Associates, Inc. from 2014, which indicated that Plaintiff had forward flexed posture and tenderness to palpation of the bilateral lower lumbar paraspinals. He had

---

[2] The administrative record includes multiple copies of records. Although the ALJ's decision cites copies of the same record, the Court omits duplicative citations to the record.

decreased range of motion of the lumbar spine with pain. On the other hand, the records also indicate that Plaintiff had normal, steady gain and negative straight leg raise bilaterally. (AR 404-408, 412-416, 439-443.) Treatment notes from Inland Pain Medicine in 2015 revealed that Plaintiff had tenderness to palpation throughout his back and pain with facet loading. Plaintiff was in no acute distress and reported that pain medications were helpful for his back pain. (AR 555-560, 563, 565.) The ALJ noted that Plaintiff's 2015 to 2016 treatment notes from Ultimate Medical Practice did not include any significant clinical findings regarding his neck and back pain. (AR 479-501.)

Next, the ALJ considered June 2016 treatment notes from Bones & Spine Surgery, which included Plaintiff's complaint of severe back pain radiating down the right leg. Physical examination, however, showed no tenderness to palpation of the cervical or lumbar spine. Spurling, Lhermitte's, straight leg, femoral strength and FABRE tests were all negative. Plaintiff had limited range of motion in the lumbar spine, but normal range of motion, stability, and strength in all four extremities. (AR 502-505.)

Ralph N. Steiger, M.D., completed a consultative orthopedic evaluation of Plaintiff in September 2016. Dr. Steiger noted that Plaintiff complained of upper and lower back pain, right front leg pain, right great toe pain, bilateral knee pain, and bilateral wrist and hand pain associated with numbness, tingling, and weakness. (AR 532-533.) Examination revealed Plaintiff's head and neck were held in a normal attitude of comfort. Plaintiff exhibited moderate tenderness to palpation at the base of the occiput bilateral and at the cervical spinous processes at the C6-C7 level. There was no tenderness to palpation of the greater occipital nerves, the scalenes, sternocleidomastoids, or the paracervical muscles bilaterally. There was moderate tenderness to palpation of the bilateral upper trapezia, bilateral levator scapulae and bilateral rhomboids. There was no spasm. Plaintiff's cervical range of motion was restricted. (AR 535.) Plaintiff's wrists revealed no swelling, but there was tenderness

upon palpation of the bilateral carpometacarpal joints. Plaintiff was able to make full fists and fully extend all finger joints to 180 degrees. Finkelstein's test was positive on the right, and both the Tinel's and Durkan's test were positive bilaterally. (AR 536-537.) Sensation was not intact in both upper extremities, with hypesthesia of the right fourth and fifth fingers. Muscle function was normal with no evidence of muscle wasting. (AR 537.) Plaintiff's ambulation was performed with a right antalgic gait; heel walking was performed with difficulty; and Plaintiff climbed on and off the examination table slowly. (AR 538.) Dr. Steiger noted moderate tenderness of the upper and lower thoracic spine and the right posterior-superior iliac spine. Plaintiff's lumbar spine range of motion was limited. (AR 538-539.) Straight leg raising was positive for pain, and Lasegue's test for sciatic nerve root was positive bilaterally. (AR 539.) Plaintiff's neurological examination was normal. (AR 541.)

With regard to Plaintiff's carpal tunnel syndrome ("CTS"), the ALJ noted that Plaintiff complained of bilateral hand pain in October 2012. (AR 268-270.) In November 2012, Plaintiff complained of numbness and tingling in the ulnar aspect of both hands. Neurodiagnostic studies of Plaintiff's upper extremities revealed moderate to severe cubital tunnel syndrome the ulnar aspect of both hands and bilateral CTS, greater on the left than the right. (AR 328-329, 335-337, 342-345.) Nevertheless, the ALJ observed that subsequent treatment notes revealed little to no complaints regarding bilateral CTS. For example, treatment notes from Primary Care of Caduceus from 2014 showed that Plaintiff was in no acute distress, and examination of his upper extremities was normal. (AR 385-389, 393-395.) Likewise, 2016 treatment notes from Bones & Spine Surgery revealed normal inspection, palpation, range of motion, stability and strength for all four extremities. (AR 502-505.)

In addition, the ALJ noted that there was no evidence of any treatment for any condition between January 2013 and February 2014. (AR 22, citing AR 265-399.)

## 2. Opinion Evidence.

### Richard Kanga, M.D.

Richard Kanga, M.D., treated Plaintiff for anxiety and depression. Dr. Kanga completed a disability questionnaire in April 2016, opining that Plaintiff was able to lift and/or carry over 50 pounds frequently and able to sit and stand/walk for six hours in an eight-hour workday. He imposed no significant limitations on Plaintiff's ability to reach, handle, or finger. Further, Dr. Kanga opined that Plaintiff would miss work less than once a month. Dr. Kanga clarified that Plaintiff saw a specialist for his back pain. (AR 520-524.)

### Fred Soeprono, M.D.

Dr. Soeprono treated Plaintiff from May to June 2015. In September 2016, Dr. Soeprono completed a skin disorder impairment questionnaire. He diagnosed Plaintiff with parapsoriasis and indicated that Plaintiff would follow up with an oncologist. Dr. Soeprono opined that Plaintiff was able to sit and stand/walk for four hours in an eight-hour day. (AR 525-529.) Dr. Soeprono explained that Plaintiff was "referred out after only three visits for continued care," and that another doctor would "be able to answer questions more thoroughly." (AR 530.)

### Dr. Steiger

In addition to examining Plaintiff, Dr. Steiger reviewed Plaintiff's diagnostic studies and numerous medical records. (AR 541-544.) Dr. Steiger made 38 clinical findings and 24 diagnoses. (AR 544-547.) Based upon his findings, Dr. Steiger opined that Plaintiff was precluded from the following: repetitive or prolonged neck movement; repetitive gripping, grasping, pinching, and fine manipulation; typing, keyboarding, data entry, or writing more than 25% of a workday; heavy lifting, pushing, or pulling; repeated bending or stooping; repetitive twisting; prolonged sitting; repetitive squatting, climbing, crawling, or kneeling: and prolonged standing or walking. In addition, Dr. Steiger opined that Plaintiff should not drive or work around machinery while taking narcotic medication. (AR 548.)

Dr. Steiger also completed a separate disability impairment questionnaire, in which he opined that:

- Plaintiff can sit for two to three hours in an eight-hour day;
- Plaintiff can stand and/or walk for one to two hours in an eight-hour day;
- Plaintiff could sit for 30 minutes at a time before needing to stand up and move around for 10 to 15 minutes;
- Plaintiff could occasionally lift and/or carry up to twenty pounds;
- Plaintiff's impairments would cause him to miss work two to three times a month.

(AR 550-554.)

State agency physicians

In September 2014, State agency physician Bill Payne, M.D., opined that Plaintiff could occasionally lift/carry twenty pounds and frequently lift/carry up to ten pounds; could sit, stand and/or walk for six hours in an eight-hour workday; could occasionally push and pull with his upper extremities and occasionally climb, balance, bend, kneel, crouch, and crawl; had a limited ability to reach overhead; was not limited in his ability to perform handling, fingering, or feeling. (AR 78-80.) On reconsideration in November 2014, State agency physician F. Kalmar, M.D., rendered the same opinions. (AR 94-96.)

**3.      The ALJ's Decision.**

In assessing Plaintiff's RFC, the ALJ discussed the foregoing evidence and medical opinions. (AR 20-22.) The ALJ assigned some weight to the opinion of Dr. Kanga, but noted that Dr. Kanga imposed a less restrictive residual functional capacity than the ALJ adopted – for example, Dr. Kanga opined that Plaintiff could lift/carry over 50 pounds frequently and had no significant limitations in reaching, handling, or fingering. (AR 22.) The ALJ gave little weight to Dr. Soeprono's opinion that Plaintiff could lift/carry 50 pounds frequently, sit, stand and/or walk for four hours in an eight-hour workday, and needed to take unscheduled breaks "as needed."

7

(AR 22.) In doing so, the ALJ explaining that although Dr. Soeprono had a treating relationship with Plaintiff, the history was brief, and Dr. Soeprono stated that after three visits, Plaintiff was referred to another physician who would be able to "answer questions more thoroughly." (AR 22.)

The ALJ noted Dr. Steiger's conclusion that Plaintiff was unable to perform full time competitive work and, specifically, Dr. Steiger's opinions that Plaintiff: was able to sit for only two or three hours, was able to stand and/or walk for only one to two hours, required breaks from sitting every 30 minutes for 10 to 15 minutes, was limited to occasional use of his bilateral upper extremities for reaching, handling and fingering, his symptoms would occasionally increase if he were placed in a competitive work environment, and was likely to miss two to three days of work per month. (AR 22.) The ALJ afforded Dr. Steiger's opinion little weight. In support of his decision, the ALJ explained:

> As discussed in detail above, the record as a whole did not support the degree of limitations found by Dr. Steiger. Additionally, Dr. Steiger had no treating relationship with the claimant, as he only saw him once during an orthopedic evaluation. Moreover, findings of "cannot work," "is disabled" or "is unemployable" by a treating doctor is not given controlling weight or given special significance as the determinant of disability under the Social Security Act are reserved to the Commissioner. SSR 96-5p.

(AR 22.)

Instead, the ALJ gave "great weight" to the opinions of the State agency medical consultants, finding that they were "generally consistent with the record as a whole and the findings of this decision." (AR 22-23.) As mentioned above, the ALJ concluded that Plaintiff retained the RFC to perform light work[3], with no climbing

---

[3] Light work contemplates the ability to lift/carry 20 pounds occasionally and 10 pounds frequently. *See* 20 C.F.R. § 404.1567(b).

ladders, ropes or scaffolds, only occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasionally reaching overhead with bilateral upper extremities; and frequently fingering, handline, and feeling with bilateral hands. (AR 20.)

### 4. Analysis.

Plaintiff contends that the ALJ failed to properly consider the medical evidence in assessing Plaintiff's RFC. Among other things, Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Steiger. (ECF No. 20 at 4-6.)

In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* 20 C.F.R. § 404.1527(b). If the ALJ rejects significant probative evidence, the ALJ must explain why. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Before rejecting the uncontradicted opinion of a treating or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill,* 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted). On the other hand, an ALJ commits error if he "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that

fails to offer a substantive basis for his conclusion." *See Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014).

Because Dr. Steiger was an examining physician and because his opinions were contradicted, the ALJ was required to provide specific and legitimate reasons before rejecting them. The ALJ provided three reasons for his decision to discount Dr. Steiger's opinions, none of which satisfy his obligation.

First, the ALJ concluded that "the record as a whole did not support the degree of limitations found by Dr. Steiger." (AR 22.) Generally, a physician's opinion regarding a claimant's limitations may be rejected because it is inconsistent with the record as a whole, so long as the ALJ provides specificity for that conclusion. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinion that is unsupported by the record as a whole or by objective medical findings); *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (same). Here, however, the ALJ dismissed Dr. Steiger's opinion as inconsistent with the record, but did not identify which of Dr. Steiger's opinions he found inconsistent with which portion of the medical record. As set forth above, Dr. Steiger assessed a wide variety of limitations, including limitations on Plaintiff's ability stand and walk, his need for breaks every thirty minutes, and a limitation to occasional use of his upper extremities to reach, grasp, and perform fine manipulation. Furthermore, the record contains objective evidence of Plaintiff's degenerative disc disease and CTS that could support these limitations. In the circumstances of this case, the ALJ's boilerplate statement does not constitute a specific and legitimate reason for rejecting Dr. Steiger's opinions. *See Garrison*, 759 F.3d at 1012-1013 (noting that "criticizing [opinions] with boilerplate language that fails to offer a substantive basis" is error); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior

cases have required....”); *Carmona v. Berryhill*, 2017 WL 3614425, at *4 (C.D. Cal. Aug. 22, 2017) (“Saying that a medical opinion is ‘inconsistent with the substantial evidence’ is not a specific reason for rejecting the opinion; it is nothing more than boilerplate.”).

Next, the ALJ rejected Dr. Steiger’s opinion because Dr. Steiger “only saw [Plaintiff] once during an orthopedic evaluation.” (AR 22.) By definition, consultative and examining physicians typically see a claimant only once. This fact alone is not a specific and legitimate reason for rejecting those physicians’ opinions. *See Cleghorn v. Colvin*, 2015 WL 8282508, at *3 (C.D. Cal. Dec. 8, 2015) (ALJ improperly rejected examining physician’s opinion because physician examined Plaintiff only one time); *Pasos v. Colvin*, 2015 WL 1097329, at *5 (C.D. Cal. Mar. 9, 2015) (same, noting that “it is well-settled that the opinions of examining physicians (who normally see claimants only once) are entitled to deference and subject to the same legal standard that the Commissioner must apply to the opinions of treating physicians”); *Rubalcava v. Colvin*, 2013 WL 4013404, at *2 (C.D. Cal. Aug. 5, 2013) (same). This error is particularly noteworthy in light of the ALJ’s decision to credit two physicians who never examined Plaintiff over the examining physician. *See Cleghorn*, 2015 WL 8282508, at *3 (“The ALJ failed to explain why [a one-time examination] was relevant to evaluating Plaintiff’s conditions – particularly in light of the ALJ’s decision to credit a physician who never examined Plaintiff over that of an examining doctor.”).

Finally, the ALJ explained that Dr. Steiger’s opinion constituted a conclusion reserved to the Commissioner. (AR 22, citing SSR 96–5p.) SSR 96-5p provides that treating-source opinions that a person is disabled or unable to work “can never be entitled to controlling weight or given special significance.” *See* 1996 WL 374183, at *5. While the rule might apply to Dr. Steiger’s conclusion that Plaintiff was “unable to perform full time competitive work” (*see* AR 548), it does not apply to Dr. Steiger’s medical opinions regarding Plaintiff’s specific functional limitations.

*See Craghill-Quinn v. Astrue*, 2009 WL 1035302, at *8 (E.D. Cal. Apr. 17, 2009) (ALJ's reference that to SSR 96-5p's rule that the decisions regarding disability and ability to work are reserved to the Commissioner is not a legitimate supporting reason to reject physician's opinion).

In defending the ALJ's determination, the Commissioner argues that the ALJ was entitled to give the opinions of Drs. Kanga and Soeprono greater weight than the opinion of Dr. Steiger because they were treating physicians. (ECF No. 22 at 2-3.) The ALJ, however, did not purport to favor the treating physicians' opinions over Dr. Steiger's. To the contrary, as set forth above, the ALJ afforded the treating physicians' opinions "some" or "little" weight and instead explicitly adopted the opinions of the non-examining State agency physicians. Moreover, simply attributing more weight to the opinions of Drs. Kanga and Soeprono – neither of whom treated Plaintiff's severe impairments of degenerative disc disease or CTS – over the opinion of Dr. Steiger, an orthopedic surgeon, would have been inconsistent with the Commissioner's regulations. *See* 20 C.F.R. § 404.1527(c)(5) (ALJs "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist"); *see also Hunt v. Berryhill*, 2017 WL 1177981, at *18 (N.D. Cal. Mar. 30, 2017).

The Commissioner further argues that the opinions of the State agency medical consultants constitute substantial evidence supporting the ALJ's decision. (ECF No. 22 at 3-4.) While the Commissioner is correct as a matter of law, this argument has no bearing on whether or not the ALJ properly considered the medical opinion of Dr. Steiger, an examining physician. Stated differently, it does not eliminate the ALJ's obligation to provide legally sufficient reasons for rejecting Dr. Steiger's opinion.

An ALJ's failure to properly evaluate a treating or examining physician's opinion may be harmless error when a reviewing court "can confidently conclude

that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). The Court cannot conclude as much here. Rather, if some or all of Dr. Steiger's opinions were credited, it would have affected the ALJ's assessment of Plaintiff's RFC and may likely have affected the ultimate determination of disability. Indeed, the VE testified that if Plaintiff were restricted to only occasional handling and fingering, the jobs identified would no longer exist. (*See* AR 63-68.) Accordingly, the Court cannot conclude that the error was harmless. *See Matthews v. Berryhill*, 2018 WL 1352927, at *4 (C.D. Cal. Mar. 15, 2018).[4]

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been

---

[4] Because remand is warranted with respect to this claim, the Court need not reach the merits of Plaintiff's other claim.

resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[5]

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 6/6/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

_____

[5] It is not the Court's intent to limit the scope of the remand.